UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA HOYT,<br><br>            Plaintiff,<br><br>    v.<br><br>WALMART, INC.,<br><br>            Defendant. | Case No. 1:23-cv-01439-CDB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND CASE TO KERN COUNTY SUPERIOR COURT**<br><br>(Doc. 5) |

On October 17, 2022, this action was commenced in the Superior Court of the State of California in and for the County of Kern as Case No. BCV-22-102743-JEB.  (Doc. 1-1 p. 1). Plaintiff raises a of negligence claim arising out of an incident where she was allegedly struck on the head by a falling 35 - 40-pound box containing a combination car seat and stroller.  (Doc. 1 p. 1).  The alleged incident occurred on the premises of Defendant's retail store in Bakersfield, California, on or about July 20, 2022. *Id*.

Plaintiff claims the box struck her in the head, neck, and shoulders and caused severe physical injuries, mental pain and suffering, and other general damages "in an amount according to proof." (Doc. 1-1 p. 2).  In the state court, on September 18, 2023, Plaintiff filed a Statement of Damages. (Doc. 1-2).  The Statement of Damages asserts damages including but not limited to $25,320.14 in past economic damages, over $1,000,000.00 in past non-economic damages, and $2,000,000.00 in future non-economic damages. *Id*.

Thereafter, on October 5, 2023, Defendant removed the case to federal court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  (Doc. 1 p. 1).  The removal documents reflect Defendant's assertion in relevant part that once Plaintiff filed her Statement of Damages, this case met the

jurisdictional requirements under 28 U.S.C. § 1332, which confers original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[.]" 28 U.S.C. § 1332(a).

Plaintiff filed a Motion to Remand on October 12, 2023.[1]  (Doc. 5).  Plaintiff asserts that this case was improperly removed to federal court because a defendant is required to file a Notice of Removal "within 30 days of the defendant's receipt of a pleading or other paper from which it may first be ascertained that the case is removable or has become removable."  (*Id.* at 5) (citing 28 U.S.C. § 1446 (b)(1)(3)).

In support of this argument, Plaintiff asserts that Defendant could have ascertained that this case is removable as far back as February 2023 when Plaintiff disclosed the report of a spine surgeon in response to a request for production of documents in the state court action.  (Doc. 5-4). In the report, the surgeon opined "with a reasonable degree of medical certainty" that Plaintiff would be required to undergo the following treatments for her cervical spine: (1) follow up visits at around $250 per visit; (2) medications costing around $1,500 per year; (3) physical therapy and other treatments for around $2,700 per course of treatment; (4) consultations for pain and medication management for $600; and (5) up to three injections per year, which each cost $15,000.  (Doc. 5-4 p. 6).

Dr. Moelleken also estimated that Plaintiff's thoracic spine treatments would cost: (1) $250 per follow-up visit; (2) $1,500 for medications; (3) $2,700 in physical therapy and other treatments per course of treatment; and (4) $1,500 to $ 2,500 per study for further MRI studies. *Id*. at 7.

Plaintiff's lumbar spine treatments are estimated as: (1) $250 per follow-up visit; (2) $1,500 for medications; (3) $2,700 in physical therapy and other treatments per course of treatment; (4) $600 for pain management and medication consultations; and (5) up to three injections per year, which each cost $15,000.  *Id*.

Dr. Moelleken also recommended that Plaintiff undergo either a cervical decompression

---

[1] The parties have indicated their consent to the jurisdiction of a United States Magistrate Judge for all proceedings in this case pursuant to 28 U.S.C. §636(c)(1).  (Doc. 6).

1  fusion or a cervical disc arthroplasty.  Either surgery would cost approximately $150,000 in the
2  facility fees alone.  *Id*. at 6-7.  Dr. Moelleken's report stated that Plaintiff preferred to avoid
3  surgery at this time but may consider surgery in the future if conservative treatments failed.  *Id*.
4  In addition, Plaintiff stated that she would consider injections.  *Id*.

5  Accordingly, Plaintiff argues this case must be remanded as Defendant was on notice that
6  the amount in controversy substantially exceeded the $75,000.00 jurisdictional threshold as of
7  February 23, 2023.  (Doc. 5).  Thus, Defendant's notice of removal should have been filed on or
8  before March 25, 2023, but instead was filed on October 5, 2023, which is far beyond the removal
9  deadline.

10  In addition, Plaintiff seeks costs and attorneys' fees in connection to its motion to remand.
11  28 U.S.C. § 1447(c).  Plaintiff avers that sanctions are appropriate as Defendant lacked good
12  cause to remove this case from Kern County Superior Court and she has incurred $3,000 in
13  attorney's fees and costs in preparation for this Motion to Remand.

**STANDARD OF LAW**

15  A defendant may remove a matter to federal court if the district court would have original
16  jurisdiction.  28 U.S.C. § 1441; *Caterpillar, Inc. v. Williams*, 842 U.S. 386, 392 (1987).  Under 28
17  U.S.C. § 1332, district courts have original jurisdiction of all civil actions where the amount in
18  controversy exceeds $75,000 and the parties are completely diverse.  Courts strictly construe the
19  removal statute against removal jurisdiction.  *Provincial Gov't of Marinduque v. Placer Dome,*
20  *Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Luther v. Countrywide Home Loans Servicing, LP*, 553
21  F.3d 1031, 1034 (9th Cir. 2008) ("A defendant seeking removal has the burden to establish that
22  removal is proper and any doubt is resolved against removability.") "[A]ny doubt about the right
23  of removal requires resolution in favor of remand."  *Moore-Thomas v. Alaska Airlines, Inc.*, 553
24  F.3d 1241, 1244 (9th Cir. 2009).

25  Removal may occur within two thirty day-periods. 28 U.S.C. § 1446(b); *Kuxhausen v.*
26  *BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013). "The first thirty-day removal
27  period is triggered if the case stated by the initial pleading is removable on its face." *Carvalho v.*
28  *Equifax. Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010) (internal citations and quotation

omitted).  "The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." *Id*. (quoting § 1446(b)). Defendants do not have a duty of inquiry to discover grounds for removability. *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018).  Furthermore, the "amended pleading, motion, order, or other paper must make a ground for removal unequivocally clear and certain" trigger the second 30-day clock under section 1446(b)(3).  *Dietrich v. Boeing Company*, 14 F.4th 1089, 1095 (9th Cir. 2021).  However, defendants are required to "apply a reasonable amount of intelligence in ascertaining removability." *Kuxhausen*, 707 F.3d at 1140 (citation omitted).

The term "other paper" generally includes any documents in the case's state court record. *Torres v. Utility Tree Service, Inc.*, 2017 WL 30561, at *2 (N.D. Cal. Jan. 3, 2017) (citing 28 U.S.C. § 1446(c)(3)(A). Moreover, unfiled deposition transcripts and responses to interrogatories qualify as "other paper" within the meaning of 28 U.S.C. §1446(b).  *Id.*; *Jordan v. Nationstar Mortgage LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015).  Likewise, a statement of damages is generally considered an "other paper" that could trigger the thirty-day period if it "is sufficient to put a defendant on notice regarding the amount in controversy as long as the estimate 'sufficiently supported by details of the injuries claimed and clearly indicate[s] that the amount in controversy exceed[s] the jurisdictional amount.'" *De Paredes v. Walmart Inc.*, 2020 WL 6799074, at *2 (C.D. Cal. Nov. 17, 2020) (quoting *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 975 (9th Cir. 2007). The term "other paper" is broadly interpreted.  *Ali v. Setton Pistachio of Terra Bella, Inc.*, No. 1:19-cv-00959-LJO-BAM, 2019 WL 6112772, at *2 (E.D. Cal. Nov. 18, 2019).  Accord, *Rynearson v. Motricity, Inc.*, 626 F. Supp. 2d 1093, 1097 (W.D. Wash. 2009) ("The type of document that constitutes an 'other paper' for the purposes of the statute is broad, reflecting courts' 'embracive construction' of the term"; "an 'other paper' ... is one that is 'generated within the specific state proceeding which has been removed'").

**DISCUSSION**

Although neither party suggests Plaintiff's complaint pleaded facts making removability

"unequivocally clear," the parties disagree whether Defendant's second 30-day clock began running either when Plaintiff served Defendant with its February 23, 2023, interrogatory responses (which includes Dr. Moelleken's report) or when Plaintiff filed her statement of damages on September 18, 2023.

Defendant claims that the February 23, 2023, responses which included the spine surgeon's report did not provide enough objective evidence that Plaintiff's damages exceeded anything certain beyond $ 24,956.14 in past medical expenses incurred, and that her future damages were unclear since the report indicated that Plaintiff preferred to avoid surgery. (Doc. 9 p. 7) (citing Doc. 5-4). Defendant argues that it could not objectively learn that the amount in controversy exceeded $75,000 dollars until it was served with Plaintiff's statement of damages on September 18, 2023. (Doc. 1-2). The statement of damages asserts general damages for past and future pain, suffering, inconvenience, and emotional distress for not less than $3,000,000.00 and special damages for not less than $383,220.14.

Plaintiff argues that notwithstanding the purported ambiguity as to whether she wished to undergo surgery, the interrogatory responses and the spine surgeon's estimation of costs greatly surpass the $75,000 statutory threshold. (Doc. 10 p. 2). Plaintiff specifically asserts that the amount of controversy threshold is ascertainable from the spine surgeon's report that Plaintiff's medical treatments in the amount of $178,000 for a cervical spine surgery, nonsurgical treatment in excess of $50,000 per year for her cervical spine and lumbar spine, as well as $6,950.00 per year for her thoracic spine. *Id.*

The Court agrees. It is readily ascertainable from Plaintiff's discovery responses that her damages exceed $75,000.00. As a starting point, there is no dispute related to Plaintiff's past medical costs, which total $24,956.14. (Doc. 5-3 pp. 5-6). Based on a conservative application of the spine surgeon's report, Plaintiff also would undertake at least one follow up visit ($250), one course of treatment ($2,700), one medication management consultation ($600), at least $1,500 in medications, and three injections ($15,000), totaling $50,050 in medical costs for a single year for her *cervical spine alone*. (Doc. 5-4 pp. 6-7). Thus, by combining Plaintiff's past medical costs of $24,956.14 and a conservative estimate of future medical costs of $50,050 for

the first year of just one course of treatment, Plaintiff's estimated first-year medical expenses $75,000.

Moreover, Plaintiff seeks by her complaint to recover not only for medical expenses, but for an indeterminate amount of past and future wage loss and impairment of earning capacity, costs for the suit incurred, pre-judgment interest, as well as for pain and suffering. (Doc. 1-1 pp. 2-3).

The Court notes there are certain ambiguities contained in the spine surgeon's report that make Plaintiff's future medical expenses difficult to calculate precisely. For example, the report expresses uncertainty as to whether Plaintiff would undergo surgery. (Doc. 5-4 p. 6). It is also unclear whether certain costs incurred for medications or physical therapy would be incurred for her cervical, thoracic, and lumbar spine either individually or collectively. However, a reasonable reading of the four corners of the report reveals that Plaintiff will incur more than $75,000 in medical expenses alone. *See LFG Payments, Inc. v. Smith*, 2023 WL 4491727, at *3 (C.D. Cal. July 11, 2023) ("imprecise" articulation of damages and unspecified amount for consultancy fees nevertheless sufficient to notice removing party of amount in controversy); *Layhee v. Fratila*, 2019 WL 6652241, at *3 (N.D. Cal. Dec. 6, 2019) (finding that Defendant was put on notice that amount in controversy threshold met when Plaintiff identified over $50,000 in medical expenses in an earlier filing and that it was implausible that the plaintiff would not seek "at least 25,000.01" for the loss of her lower leg).

Defendant should have been able to ascertain that the amount in controversy in this case exceeded $75,000 as early as February 23, 2023, when it received interrogatory responses and the spine surgeon's report estimating medical expenses for proposed treatment in excess of the statutory threshold – particularly when coupled with allegations in the complaint for additional categories of damages.

\*     \*     \*     \*     \*

The standard for awarding attorneys' fees when remanding a case to state court "should turn on the reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "[A]bsent unusual circumstances, attorney's fees should not be awarded . . . when the

6

removing party has an objectively reasonable basis for removal." *Id*. at 136. "Removal is not objectively unreasonably solely because the removing party's arguments lack merit and the removal is ultimately unsuccessful." *Leon v. Gordon Trucking, Inc.*, 76 F. Supp.3d 1055, 1073 (C.D. Cal. 2014). Instead, courts analyze whether relevant case law foreclosed the defendant's basis for removal. *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp.3d 1187, 1206 (C.D. Cal. 2015). Removal based on novel arguments where the existing law is inconclusive is not necessarily unreasonable, even if the argument ultimately fails to persuade the court. *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008).

Although the Court finds that Defendant's removal was untimely, the removal was not objectively unreasonable. "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Id*.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Plaintiff's Motion to Remand and DENIES Plaintiff's request for attorneys' fees and costs.

The action is remanded to Kern County Superior Court. Upon remand, the Clerk of Court is DIRECTED to close this case.

IT IS SO ORDERED.

Dated:   **November 20, 2023**                    _____
                                                                        UNITED STATES MAGISTRATE JUDGE